# UNITED STATES, INTERSTATE COMMERCE COMMISSION, AND FEDERAL SUGAR REFIN-ING COMPANY *v.* THE BALTIMORE AND OHIO RAILROAD COMPANY.

## APPEAL FROM THE UNITED STATES COMMERCE COURT.

No. 722.   Argued January 15, 16, 1912.—Decided June 10, 1912.

The Commerce Court has jurisdiction of a petition of a carrier to re-strain an affirmative order of the Interstate Commerce Commission that it desist from paying allowances for lighterage to one shipper un-less it pays the same to other shippers, and also has power to de-termine whether such order was entitled to be enforced.

The Commerce Court has power to allow a preliminary injunction against the enforcement of an order of the Interstate Commerce Commission directing the carrier to desist from paying allowances for lighterage.

An appeal to this court from an interlocutory order of the Commerce Court allowing a preliminary injunction against the enforcement of an affirmative order of the Interstate Commerce Commission lies under § 2 of the act creating the court, now § 210 of the new Judicial Code.

Under § 210 of the Judicial Code, injunction orders can be issued by the Commerce Court restraining the enforcement of an order of the Interstate Commerce Commission in the following classes of cases:

First. A temporary restraining order staying in whole or in part the operation of the order for not more than sixty days to be allowed by the court or a judge thereof.

Second. A preliminary injunction to restrain or suspend in whole or in part the operation of the Commission's order *pendente lite* to be granted by the court.

Third. A perpetual injunction upon entry of final decree.

The requirements in § 210, Judicial Code, that a restraining order must contain a statement of facts as to irreparable damage resulting from the order of the Commission relate only to the first class of cases.

This court will not apply to the construction of the equity powers of a statutory court, general principles of equity, if the effect would be to destroy the law creating the court by expunging therefrom the very powers which Congress intended to grant; and so *held* that the power given by § 210, Judicial Code, to the Commerce Court to issue an injunction *pendente lite* was to enable that court to have proper time for consideration, and the right of appeal to this court was given as a safeguard against a possible abuse of the power to issue the order; and the order will not be reversed in the absence of such abuse.

Where Congress creates a special tribunal for a special class of cases with an appeal to this court it is the duty of this court to give effect to that purpose and uphold the lawful authority of the court so created and to also correct abuse of power when it appears.

In this case, *held,* that there was no abuse of power in issuing the order for an injunction *pendente lite* and the order is affirmed and the case remanded so that there may be opportunity to dispose of it in the forum selected by Congress for that purpose.

THE facts, which involve the jurisdiction of the Commerce Court and its power to issue restraining orders, and injunctions, are stated in the opinion.

*The Solicitor General* for the United States:

A carrier cannot make the ownership of commodities the test of its duty to carry them or the criterion of the rates for carriage. *Interstate Com. Comm.* v. *Delaware, L. & W. R. R. Co.,* 220 U. S. 235. For the same reason the carrier may not inquire as to the place of origin and base its rates upon that.

A carrier may not make rules which discriminate between shippers standing in substantially the same relation to it. *Union Pacific R. R. Co.* v. *Updike Grain Co.,* 222 U. S. 215.

*Mr. P. J. Farrell* for the Interstate Commerce Commission:

A carrier may establish a separate charge for terminal

services which are in addition to and entirely separate and distinct from the transportation; and where such separate charge is established it must be considered as applicable only to the services covered thereby as shown by the tariffs of the carrier published and filed, according to law. *Interstate Com. Comm.* v. *Stickney*, 215 U. S. 98. And see *Southern Ry. Co.* v. *St. Louis Hay & Grain Co.*, 214 U. S. 297.

One provision of the Interstate Commerce Act may not be seized upon and used regardless of other provisions of the same act to justify inequalities in the treatment accorded by carriers to shippers. The act was enacted for the purpose of preventing such inequalities. *Interstate Com. Comm.* v. *Balto. & Ohio R. R. Co.*, 145 U. S. 263; *Union Pacific Ry. Co.* v. *Goodridge*, 149 U. S. 680; *Cinn., N. O. & T. P. Ry. Co.* v. *Interstate Com. Comm.*, 162 U. S. 184; *Texas Pacific Ry. Co.* v. *Interstate Com. Comm.*, 163 U. S. 197; *Interstate Com. Comm.* v. *Cinn., N. O. & T. P. Ry. Co.*, 167 U. S. 479; *Union Pacific R. R. Co.* v. *Updike Grain Co.*, 222 U. S. 215; *Wight* v. *United States*, 167 U. S. 512; *Interstate Com. Comm.* v. *Alabama Midland Ry. Co.*, 168 U. S. 144; *East Tennessee, V. & G. Ry. Co.* v. *Interstate Com. Comm.*, 181 U. S. 1; *New York, N. H. & H. R. R. Co.* v. *Interstate Com. Comm.*, 200 U. S. 361; *Texas & Pacific Ry. Co.* v. *Abilene Cotton Oil Co.*, 204 U. S. 426; *Interstate Com. Comm.* v. *Chicago G. W. Ry. Co.*, 209 U. S. 108; *Interstate Com. Comm.* v. *Illinois Cent. R. R. Co.*, 215 U. S. 452; *Interstate Com. Comm.* v. *Delaware, L. & W. R. R. Co.*, 220 U. S. 235.

The Commerce Court erred in substituting its own judgment for that of the Commission concerning the character of the discrimination which constituted the basis of the Commission's order. *Interstate Com. Comm.* v. *Illinois Cent. R. R. Co., supra; Baltimore & Ohio R. R. Co.* v. *United States ex rel. Pitcairn*, 215 U. S. 481; *Southern Pacific Co.* v. *Interstate Com. Comm.*, 219 U. S. 433; *Inter-*

*state Com. Comm.* v. *Delaware, L. & W. R. R. Co.*, 220 U. S. 235.

*Mr. Ernest A. Bigelow* for the Federal Sugar Refining Company:

The Commission's findings of fact, supported as they are by the evidence, will not be reviewed by this court, *Interstate Com. Comm.* v. *Delaware, L. & W. R. R. Co.*, 220 U. S. 235; and its conclusions of law were correctly drawn. See *Coe* v. *Erroll*, 116 U. S. 517; *L. & L. F. Ins. Co.* v. *R., W. & O. R. R.*, 144 N. Y. 200; *Penn. Ry.* v. *Int. Coal Mining Co.*, 173 Fed. Rep. 1.

The Act to Regulate Commerce was intended to afford an effective means for redressing the wrongs resulting from unjust discrimination and undue preference, and the incidental and wholly subordinate provisions of § 15 cannot be allowed to frustrate the fundamental purpose of the act. *Interstate Com. Comm.* v. *Illinois Cent. Ry. Co.*, 215 U. S. 477.

As to the so-called admission made by counsel for the Federal Sugar Refining Company. Even if made with the full force and effect attributed to it, it is immaterial, as the Commission has the power in the public interests to consider the whole subject, disembarrassed by any supposed admissions, even if contained in the complaint. *C. H. & D. Ry.* v. *Interstate Com. Comm.*, 206 U. S. 142.

On this appeal the court may properly consider and decide the whole cause on the merits. *Smith* v. *Vulcan Iron Works*, 165 U. S. 518; *Mast, Foos & Co.* v. *Stover Mfg. Co.*, 177 U. S. 485, citing *Knoxville* v. *Africa*, 77 Fed. Rep. 501; *Green* v. *Mills*, 69 Fed. Rep. 852.

*Mr. George F. Brownell*, with whom *Mr. Herbert A. Taylor* was on the brief, for railroad companies, appellees:

The service performed by the Federal Sugar Refining Company through the medium of the Ben Franklin Trans-

portation Company is not a transportation service of the railroad companies, but is wholly accessorial and cannot lawfully be paid for by these appellees. *In re Allowances for Transfer of Sugar,* 14 I. C. C. 619; *Wight* v. *United States,* 167 U. S. 512; *Chicago & Alton Ry. Co.* v. *United States,* 156 Fed. Rep. 558; *General Electric Co.* v. *N. Y. C. & H. R. R. Co.,* 14 I. C. C. 237; *Solvay Process Co.* v. *D., L. & W. R. R. Co.,* 14 I. C. C. 246.

The employment of the Jay Street Terminal to act as the public freight station of these appellees in receiving and delivering freight and to perform floatage and lighterage service was perfectly lawful. Both the Commission and the courts have held that railroads may secure and maintain freight depots by contract with shippers and that such depots thereby become legally and to all intents and purposes the freight depots of the railroads. *Central Stock Yards Co.* v. *L. & N. Ry. Co.,* 192 U. S. 568; *Railroad Commission* v. *L. & N. Ry. Co.,* 10 I. C. C. 173; *Cattle Raisers' Assn.* v. *C., B. & Q. R. R. Co.,* 11 I. C. C. 277.

The entering into a contract with one shipper to furnish station facilities does not result in a violation of the provisions of the Act to Regulate Commerce forbidding undue preferences and advantages, even if similar contracts are not made with all competing shippers in the same locality. *Central Stock Yards Co.* v. *L. & N. Ry. Co.,* 118 Fed. Rep. 113, 117; aff'd, 192 U. S. 568; *Covington Stock Yards Co.* v. *Keith,* 139 U. S. 128, 136; *Butchers' & Drovers' Stock Yards Co.* v. *L. & N. Ry. Co.,* 67 Fed. Rep. 35; *United States* v. *Delaware, L. & W. R. Co.,* 40 Fed. Rep. 101; *Consolidated Forwarding Co.* v. *Southern P. Co.,* 9 I. C. C. 182, 206; *Worcester Co.* v. *Pennsylvania R. R. Co.,* 3 I. C. C. 577, 584; *Re Transportation of Fruit,* 10 I. C. C. 360.

An unjust discrimination or an undue preference is not created by the action of a railroad company in employing a shipper to perform a part of the transportation service, when the shipper is paid a compensation that is reasonable

for the performance of the service, simply because other shippers who are not in position to perform the same transportation service may be subjected to disadvantages. *Peavey & Co.* v. *Union Pacific R. Co.*, 176 Fed. Rep. 409; aff'd, 222 U. S. 42.

*Mr. William N. Dykman* for Jay Street Terminal and Arbuckle Brothers, intervenors:

This court reviews the findings of the Interstate Commerce Commission upon appeal from an order granting an injunction suspending the order of the Commission. *Interstate Com. Comm.* v. *Delaware, L. & W. R. Co.*, 216 U. S. 531; *Interstate Com. Comm.* v. *Northern Pacific R. Co.*, 216 U. S. 538. See, also, *Missouri, K. & T. Ry. Co.* v. *Interstate Com. Comm.*, 164 Fed. Rep. 645; *Kentucky Bridge Co.* v. *Louisville & N. Ry. Co.*, 37 Fed. Rep. 567.

On an appeal from an order granting an injunction *pendente lite* the appellant must show that no cause of action is stated in the bill. *Hudson R. T. Co.* v. *W. T. & R. R. Co.*, 121 N. Y. 397.

No commission, nor any court, can treat that as a public or private wrong which the Congress has authorized. *Hammersmith &c. R. Co.* v. *Brand*, 4 H. L. Cas. 171; *Bellinger* v. *N. Y. C. R. Co.*, 23 N. Y. 42.

In New York, at least, there is no doubt of the validity of a contract by which a carrier limits its common-law liability. *Bermel* v. *N. Y., N. H. & H. R. Co.*, 6 App. Div. 389; aff'd, 172 N. Y. 629; *Zimmer* v. *N. Y. C. & H. R. R. Co.*, 137 N. Y. 460; *Wheeler* v. *Oceanica S. N. Co.*, 125 N. Y. 155.

When the terminal receives sugar for shipment and issues a bill of lading for and in the name of the railroad company, title to the merchandise changes from the consignor to the consignee, *Mee* v. *McNider*, 109 N. Y. 500; *Wilcox Silver Plate Co.* v. *Green*, 72 N. Y. 17; *Waldron* v. *Romaine*, 22 N. Y. 368; *Gilbert* v. *R. R. Co.*, 4 Hun, 317; Williston on

Sales, § 278; and the railroad journey and responsibility begins, Hutchinson on Carriers, § 158; *Abe* v. *Eaton*, 51 N. Y. 410. The liability of the carrier, in fact, begins as soon as it receives the merchandise for carriage, even ·if bills of lading have not been shipped or a journey commenced; the mere reception of the goods for the purpose of immediate transportation is sufficient to inaugurate liability. *Ames* v. *Fargo*, 114 App. Div. 666; *S. C.*, 42 Hun, 332; Hutchinson on Carriers, § 113.

The sole distinction between sugar shipped by Arbuckle Brothers to themselves in one and the same car with the general merchandise of another shipper is that the carrier has contracted with the shipper to do a service and furnish an instrumentality of transportation. This the Congress, on the recommendation of the Commission, has expressly authorized.

The Commission exceeded its power in forbidding payment to the Jay Street Terminal for handling Arbuckle Brothers' sugar, because the terminal service is a part of the railroad transportation, the statute allows the carrier to hire the shipper to render such a service and furnish such instrumentality, and the allowance is conceded to be no more·than is just and reasonable. *Interstate Com. Comm.* v. *Diffenbaugh*, 222 U. S. 42; *Union Pacific R. Co.* v. *Updike Grain Co.*, 222 U. S. 215.

It is beyond the power of the Commission to order payments to the Federal Company for lightering sugar to the railroad terminals. *Wight* v. *United States*, 167 U. S. 512; *Chicago & Alton R. Co.* v. *United States*, 156 ·Fed. Rep. 558; *General Electric Co.* v. *N. Y. C. & H. R. Co.*, 14 I. C. C. 237; *Solvay Process Co.* v. *D., L. & W. R. Co.*, 14 I. C. C. 246; *Matter of Allowance for Transfer of Sugar*, 14 I. C. C. 619.

It is not a discrimination to contract with the Jay Street Terminal to maintain a railroad freight station in Brooklyn and there to collect, receive and deliver freight,

issue bills of lading and float loaded cars between Brooklyn and Jersey City, and at the same time refuse to contract with the Federal Sugar Refining Company for lighterage from Pier 24. *Interstate Com. Comm.* v. *Baltimore & Ohio R. R. Co.,* 145 U. S. 276; *Central Stock Yards Co.* v. *L. & N. R. Co.,* 118 Fed. Rep. 113; aff'd, 192 U. S. 568. See, also, *Covington S. Y. Co.* v. *Keith,* 139 U. S. 128; *United States* v. *D., L. & W. R. R. Co.,* 40 Fed. Rep. 101.

It is lawful for a railroad to procure equipment by lease from one shipper and to refuse to make identical contracts with other shippers. *Consol. Forwarding Co.* v. *Southern Pacific Co.,* 9 I. C. C. 182; *Worcester Ex. Co.* v. *P. R. Co.,* 3 I. C. C. 577. See, also, *Matter of Trans. of Fruit,* 1 I. C. C. 360.

It is beyond the power of the Commission to allow more than the cost of lighterage to the Federal Company to offset less than cost paid the Jay Street Terminal for its services. *Minn. & St. L. R. Co.* v. *Minnesota,* 186 U. S. 257; *Matter of Allowance for Transfer of Sugar,* 14 I. C. C. 619.

It is elementary that a partner may engage with other persons in a partnership business outside the scope of his firm business, provided it does not compete therewith. Am. & Eng. Ency. of Law, Vol. 22, p. 118; *Gossett* v. *Wilson,* 3 Florida, 235; *Weaver* v. *Weaver,* 46 N. H. 188.

It necessarily follows that if one partner may engage in a separate and distinct business with other persons under a different partnership name, he may also engage in a separate and distinct business under a different name with the same persons who constitute the firm of which he is already a member. These two partnerships composed of the same individual members engaged in separate and distinct enterprises under different names are in the eyes of the law separate and distinct entities.

Under the Bankrupt Act a partnership is a separate and distinct legal entity from the individuals who compose it.

Collier on Bankruptcy, pp. 114, 115, 116; *In re Sunderlin*, 109 Fed. Rep. 857; *In re McMurtrey*, 142 Fed. Rep. 853.

A partnership may be adjudged a bankrupt although the partners who compose it are not so adjudicated. *In re Bertenshaw*, 157 Fed. Rep. 363.

The Bankrupt Act is merely declaratory of recognized equitable principles in the administration of insolvent partnerships. , *Hewitt* v. *Northrup*, 75 N. Y. 506; *Wilder* v. *Keeler*, 3 Paige, 67.

Arbuckle Brothers and Jay Street Terminal are separate and distinct entities.

*Mr. H. B. Closson* filed a brief for the Brooklyn Eastern District Terminal, appellee.

Mr. CHIEF JUSTICE WHITE delivered the opinion of the court.

This is a suit instituted in the Commerce Court to enjoin the enforcement of an order by the Interstate Commerce Commission.

The complainants in the bill are The Baltimore and Ohio Railroad Company, The Central Railroad Company of New Jersey, The Delaware, Lackawanna and Western Railroad Company, The Erie Railroad Company, The Lehigh Valley Railroad Company, The New York, Ontario and Western Railway Company, and The Pennsylvania Railroad Company. The Brooklyn Eastern District Terminal and John Arbuckle and William A. Jamison, copartners, trading as the Jay Street Terminal, intervened and were made parties complainant, they being interested to defeat the order of the Commission.

The defendant named in the bill is the United States. The Interstate Commerce Commission appeared, and the Federal Sugar Refining Company intervened and was made a party defendant.

The order which it was the purpose of the suit to enjoin was made in a proceeding commenced before the Commission on behalf of the Federal Sugar Refining Company, to compel the railroads above named to desist and abstain from paying to Arbuckle Brothers, claimed to be operating what is known as the Jay Street Terminal, certain so-called allowances for floatage, lighterage and terminal services rendered by them to the complainants in connection with sugar transported by them in New York Harbor to and for the complainants, while at the same time paying no such allowances to the said Federal Sugar Refining Company on its sugar.

We substantially adopt as accurate a summary statement made of the subject-matter of the controversy in the brief of counsel for the railroad companies:

"The Federal Sugar Refining Company has a refinery at Yonkers, N. Y., and Arbuckle Brothers have a refinery in the Borough of Brooklyn, New York City. The railroad companies operate what are known as trunk line railroads, extending from New York to western and southern points. In order to receive and deliver freight in New York City they are obliged to transport the same across the waters of New York harbor on lighters by what is called lighterage service, or, when the freight is carried through in railroad cars, on car floats by what is called floatage service.

"At numerous points along the New York City water front within the lighterage limits they have established public stations for the receipt and delivery of freight.

"They have also established boundaries known as 'lighterage limits,' including substantially all of what may be called the manufacturing and commercial portion of the water front of New York City and the opposite shore of New Jersey and within these boundaries they receive and deliver freight at any accessible point on the water front without any additional charge above the New York rates, which are, generally speaking, the same as the rates

to and from the terminals on the New Jersey shore.  At 'public' docks open to any vessel, the railroad pays the wharfage; at private docks the shipper or consignee must arrange for the necessary dockage.

"At a number of points in the Boroughs of Brooklyn and the Bronx, the railroad companies or some of them furnish public stations through arrangements made with terminal companies to furnish union public stations and terminal facilities for the receipt and delivery of freight in cars and through freight houses, and for the transportation of such freight between such terminal stations and the railroad companies' rails on the western shore of the harbor, all of which is done for and in the name of the railroad companies under provisions of their tariffs filed with the Interstate Commerce Commission under which their New York rates apply to and from such union public stations.

"One of these public terminal stations, known as the Jay Street Terminal, is owned and operated by William A. Jamison and John Arbuckle, conducting a separate business in that respect as copartners under the name and style of 'Jay Street Terminal' in accordance with the laws of the State of New York.  Jay Street Terminal is named as a station of the railroad companies, appellees, in their respective tariffs, and is conducted under contract with the railroad companies like any other freight station, bills of lading being issued from and to it on behalf of the railroad companies and in their names, on the regular uniform form, charges being collected and accounts kept, the Jay Street Terminal performing the entire physical and clerical service and furnishing the necessary docks, freight yard and station buildings and equipment, excepting cars.  The Jay Street Terminal also floats or lighters all shipments between the terminal and the rails of the railroad companies on the New Jersey shore.  For these services and facilities each railroad company pays to the

Jay Street Terminal an aggregate compensation figured on the freight handled for it, based on the rate of $4^1/_5$ cents per hundred pounds on freight originating at or destined to points at or west of the westerly limits of Trunk Line Territory, so called, and 3 cents per hundred pounds on freight originating at or destined to points east of the westerly limit of Trunk Line Territory. The same amounts per hundred pounds are paid to other terminal companies furnishing similar service at New York.

"The refinery of Arbuckle Brothers, a copartnership composed of William A. Jamison and John Arbuckle, is within two blocks of the Jay Street Terminal, and they truck sugar from their refinery to this terminal and load it into cars at their own expense and deliver it to the Jay Street Terminal and obtain the railroad company's bill of lading for it from the Jay Street Terminal just as other shippers do with other freight.

"The refinery of the Federal Sugar Refining Company at Yonkers, New York, formerly operated by the Federal Sugar Refining Company of Yonkers, is located on the Hudson River, ten miles north of the lighterage limits. The sugar manufactured at this refinery and shipped over the lines of these appellees is loaded onto lighters of the Ben Franklin Transportation Company, an independent boat line with which the Federal Sugar Refining Company has made a contract, under which the boat line lighters its sugar to the terminals of the railroad companies for three cents per hundred pounds. The boat line brings the sugar to the terminals of the railroads on the western shore of New York harbor and delivers it to them for rail transportation.

"The Federal Sugar Refining Company's refinery at Yonkers is located directly on the tracks of the New York Central and Hudson River Railroad Company. Over this railroad the rates to the points in the shipping territory of the Federal Sugar Refining Company are with few

exceptions the same as the rates via the lines of the railroad companies. To ship at the New York rate over the lines of the roads the Federal Sugar Refining Company can deliver its shipments to the New York Central and Hudson River Railroad at Yonkers, thence to be transported by that railroad to New York and there delivered to the said railroad companies within lighterage limits. None of these railroads have lines extending to Yonkers. Because of alleged delay in the handling and transportation of shipments via this route, the Federal Sugar Refining Company sometimes prefers to deliver said shipments by lighter to the said railroad companies at their stations on the New Jersey shore of New York harbor.

"Prior to July, 1909, these shipments were carried by the Ben Franklin Transportation Company directly to the rail terminals on the Jersey shore from Yonkers without stop. Since that date the lighters stop en route at Pier 24, North River. The reason for stopping at Pier 24 is found in the decision made by the Commission in case No. 1082, brought by the Federal Sugar Refining Company of Yonkers, the predecessor of the Federal Sugar Refining Company, against the same railroad companies, appellees here (17 I. C. C. 40). The complaint in that proceeding claimed a discrimination against the Federal Sugar Refining Company of Yonkers and in favor of the Jay Street Terminal and the Brooklyn Eastern District Terminal, an incorporated company operating a similar terminal station in another section of Brooklyn, because of the refusal of the railroad companies to pay it the same amounts on account of the lighterage performed by the Ben Franklin Transportation Company from Yonkers to the rail terminals of the railroad company on the western shore of New York harbor as were paid to the two terminal companies above named on account of the various services performed and terminal facilities furnished by them in connection with the transportation of sugar shipped by

Arbuckle Brothers and the American Sugar Refining Company respectively. This complaint was dismissed because the extension of the lighterage limits in New York harbor of the railroad companies was a matter of business discretion, and that the Commission had no authority to require such extension beyond the then prescribed boundaries, and that the Federal Sugar Refining Company, being located outside of the prescribed lighterage limits, was not subjected to unlawful discrimination by reason of the practice of the railroad companies in affording free lighterage on shipments originating at a distance to points within said lighterage limits while refusing to so afford on shipments of the Federal Sugar Refining Company.

"As a result of this decision of the Commission the lighters of the Ben Franklin Transportation Company were stopped en route from Yonkers at Pier 24, North River, where certain formalities with reference to shipping orders were had for the purpose of making it appear as a matter of law that these shipments were made not from Yonkers, but from Pier 24, North River, a point within lighterage limits. A new complaint was filed with the Commission, setting forth the same grounds of discrimination as the prior one, but on the theory that the decision of the Commission did not apply because the shipments of the Federal Sugar Refining Company were now lightered from Pier 24, a point within lighterage limits and not from Yonkers, the Commission held as a matter of law that the stoppage of the lighters of the Ben Franklin Transportation Company for instructions at Pier 24, differentiated the case from the former one and made the following order:

"'It is ordered that the above-named defendants (the appellees) be and they are hereby notified and required to cease and desist on or before the 15th day of April, 1911, and for a period of not less than two years thereafter abstain from paying such allowances to Arbuckle Brothers

on their sugar, while at the same time paying no such allowance to said complainant (Federal Sugar Refining Company) on its sugar, which said allowances so paid to said Arbuckle Brothers by said defendants are found by the Commission in said report to be unduly discriminatory and in violation of the act to regulate commerce.'

"The so-called 'allowances' referred to in this order are. a part of the payments making up the compensation of the Jay Street Terminal, figured at the rates of three cents and $4\frac{1}{5}$ cents per hundred pounds as above described."

This is the order the enforcement of which was the subject-matter of the controversy in the court below.

The United States, the Interstate Commerce Commission and the Federal Sugar Refining Company promptly filed motions to dismiss the petition and the intervening petition of the Jay Street Terminal upon the ground of want of equity and because the order of the Commission was an adjudication of matters of fact as to which its judgment was conclusive. The petitioners, on the other hand, applied for an injunction *pendente lite* suspending the order of the Commission until the final determination of the action. The motions to dismiss were denied. On the same day, the motion for a temporary injunction—which had been heard upon the petition and intervening petitions and affidavits submitted by petitioners in support of the averments of the petition and intervening petition—was granted, and the assailed order "and its force and effect" was suspended until the further order of the court. This appeal was then taken.

There was clearly a right in the court below to entertain jurisdiction of the petition and to determine whether the affirmative order of the Commission was entitled to be enforced. There was clearly also power in the court to allow a preliminary injunction, since that authority is conferred in express terms by § 3 (208) of the act. And

the right to appeal from such an order is also in express terms conferred by § 2 (210) of the act.

It is urged on behalf of the United States and the Interstate Commerce Commission that, wholly irrespective of the merits of the petition, the order granting the interlocutory injunction must be reversed because of what is insisted to be the express requirements of the act imposing the duty on the Commerce Court or a judge of that court if a restraining order is granted under the conditions in the statute to state the facts from which it is found that irreparable injury would arise if a restraining order were not allowed. The section containing the provision relied upon is as follows:

"That suits to enjoin, set aside, annul, or suspend any order of the Interstate Commerce Commission shall be brought in the Commerce Court against the United States. The pendency of such suit shall not of itself stay or suspend the operation of the order of the Interstate Commerce Commission; but the Commerce Court, in its discretion, may restrain or suspend, in whole or in part, the operation of the Commission's order pending the final hearing and determination of the suit. No order or injunction so restraining or suspending an order of the Interstate Commerce Commission shall be made by the Commerce Court otherwise than upon notice and after hearing, except that in cases where irreparable damage would otherwise ensue to the petitioner, said court, or a judge thereof, may, on hearing, after not less than three days' notice to the Interstate Commerce Commission and the Attorney General, allow a temporary stay or suspension in whole or in part of the operation of the order of the Interstate Commerce Commission for not more than sixty days from the date of the order of such court or judge, pending application to the court for its order or injunction, in which case the said order shall contain a specific finding, based upon evidence submitted to the judge making the

order and identified by reference thereto, that such irreparable damage would result to the petitioner and specifying the nature of the damage. The court may, at the time of hearing such application, upon a like finding, continue the temporary stay or suspension in whole or in part until its decision upon the application."

Without ambiguity we think the statute contemplates three classes of orders: First, a temporary restraining order staying in whole or in part the operation of the order of the Interstate Commerce Commission for not more than sixty days from the date of the suspensive order, to be allowed by the court or a judge thereof; second, a preliminary injunction, that is, an injunction *pendente lite*, which, to quote the words of the statute, may be granted by the court to "restrain or suspend, in whole or in part, the operation of the Commission's order pending the final hearing and determination of the suit;" third, in the nature of things a perpetual injunction upon the entry of the final decree. The order in this case, made after notice and hearing, suspending the force and effect of the order of the Commission until the further order of the court, was obviously an exercise of the power conferred to grant a preliminary injunction or injunction *pendente lite* and not of the power to allow a temporary restraining order embraced in the first of the classes stated. As we think it clear that the requirements of the statute relied upon respecting the statement of facts as to irreparable damages relate only to the first class of cases, that is, the power to issue a temporary restraining order, we hold the objection to be without merit.

This brings us to consider the scope of our reviewing authority under the right conferred by the statute to appeal from the allowance by the court below of a preliminary injunction or injunction *pendente lite*. To determine this question requires a consideration of the nature and character of the powers which the court had a right to

exert over the subject-matter presented to it by the petition filed to perpetually enjoin the enforcement of the order of the Commission.

We have determined in the *Procter & Gamble Case, ante,* p. 282 that the Commerce Court was but endowed in considering whether an affirmative order of the Commission should be enforced on the one hand or set aside and de-. clared non-enforcible on the other with the jurisdiction and power existing at the time that act was passed in the Circuit Courts of the United States. And as, at that time it was conclusively settled that the courts had only authority to reëxamine the findings of the Commission as to subjects like the one here under consideration, for the purpose of ascertaining whether the action of the Commission was repugnant to the Constitution, in excess of the statutory powers conferred upon it, or manifested such an abuse as to be equivalent to an excess of authority, it clearly results that the court below was likewise limited in passing upon the petition before it in this case. This being true, it is also necessarily true that virtually the sole authority of the court below was in a sense confined to determining questions of law arising upon the case as presented on the face of the pleadings. Under the general principles of equity, where a court is called upon to decide whether it will allow a preliminary or *pendente lite* injunction the duty arising requires it to be determined whether on the face of the papers presented there is such an equitable cause of action presented as justifies the issue of a preliminary injunction to preserve the status pending the suit, that is, to afford an opportunity for a trial of the issues presented. Necessarily it is true also that where an appeal is allowed from an order granting a preliminary injunction the reviewing court is put to the duty of determining whether on the face of the papers the court below erred as a matter of law in granting the preliminary injunction. Do these principles apply to the case before

us, is then the first consideration. The result of holding that they do will inevitably cause the expunging from the act of the express authority conferred to issue a preliminary injunction, since viewed under the general principles of equity the criteria by which to determine the rightfulness of such an order in view of the nature and character of the jurisdiction of the Commerce Court is exactly and exclusively the same criteria by which the rightfulness of a final decree of that court issuing a perpetual injunction in conformity to such decree would require to be tested. Our duty, however, is not to destroy the law but to enforce it, and in doing so to seek to discover the intention of the lawmaker, the wrong intended to be prevented and the remedy designed to be afforded by the enactment of the statute. Coming to consider the statute for this purpose, we have pointed out in the *Procter & Gamble Case* that the great remedy intended to be accomplished was the concentration in a single court of the power to consider the rightfulness of enforcing or setting aside orders of the Commission; that to prevent unnecessary delays the limitations as to restraining orders and their duration and the hearing which is commanded as to irreparable injury was enacted. It must therefore in reason be that the power to issue a preliminary injunction was recognized and preserved so as to afford the court the proper time for deliberation and consideration of the questions to be decided by the Commission instead of compelling that body virtually *eo instante* upon the presentation of a petition to reach a final conclusion. And it would seem also to be the case that the right to appeal from such an order was given as a safeguard against a possible abuse of discretion by an unwarranted, arbitrary and unreasonable exercise of the power conferred. In other words, we think that the enlightened purpose of Congress was that the court which it created, in the exercise of the important trusts confided to its authority

and where occasion required it as a consequence of the gravity and complexity of the legal questions which might arise, should be afforded ample opportunity for due consideration and ripe judgment and that it was not intended to compel precipitate, and perhaps ill-considered, action.

Coming to consider the case presented in the light of these principles, in view of the doubt which existed as to the scope and effect of the powers conferred upon the Commission, as shown by the decision of the court in the *Procter & Gamble Case,* of the nature and character of the subject-matter here under consideration and its importance, of the action of the Commission had on that subject prior to the making of the order of the Commission which was assailed by the petition, and especially of the diversity of opinion which existed among the members of the Commission on the subject, we think there is no room for saying that the preliminary injunction issued was in excess of the power conferred upon the court, because of the plain want of necessity for it resulting from the obvious nature and character of the legal questions as to which the judgment of the court was invoked in consequence of the filing of the petition calling for the exertion of the authority conferred upon it by Congress.

It is not disputable that although the right to appeal to this court from an order like the one here in question is conferred, yet obviously the purpose which must have caused the creation of the Commerce Court must have been the desire to interpose between the action of the Commission and this court an intermediate tribunal, having the powers which the statute delegates to it. Our duty is to give that purpose effect and to uphold the lawful authority of the court, without deviation and yet without hesitancy where there has been an abuse of discretion to correct it in the completest way. But as this case manifests no such abuse, our duty is not to reverse the action of the court but to remand the case so that

there may be an opportunity to dispose of it on the merits in the forum selected by Congress for that purpose. Of course, in saying this, we must not be understood as deciding or in any way implying that the duty would not exist to examine the merits of a preliminary order of the general character of the one before us in a case where it plainly in our judgment appeared that the granting of the preliminary order was in effect a decision by the court of the whole controversy on the merits or where it was demonstrable that grave detriment to the public interest would result from not considering and finally disposing of the controversy without remanding to enable the court below to do so.

*Affirmed.*