SUPERIOR TRUCKING COMPANY, INC., et al., Petitioners,

v.

UNITED STATES of America and Interstate Commerce Commission, Respondents.

No. 79–3257.

United States Court of Appeals, Fifth Circuit.

March 24, 1980.

Robert E. Born, Atlanta, Ga., for petitioners.

Barry Grossman, Marion L. Jetton, Dept. of Justice, Washington, D. C., H. Glenn Scammel, Atty., Washington, D. C., for respondents.

Harry McCall, Jr., New Orleans, La., for Jones Motor Co., Inc.

On Petition for Review of an Order of the Interstate Commerce Commission.

Before GODBOLD, REAVLEY and ANDERSON, Circuit Judges.

PER CURIAM:

Superior Trucking Co. and three other motor carriers ("petitioners") authorized to provide irregular route service in various commodities, petitioned for review of an order of the Interstate Commerce Commission ("ICC") granting an Emergency Temporary Authority ("ETA") to Jones Motor Co. (JMC) to provide service in seven southern states. On September 26, 1979, this court granted petitioners' application for an "interlocutory injunction, temporary stay and for stay pending disposition of petition for review." The ICC has rescinded an earlier extension of the ETA and has refused to grant another while this court's order remains in effect. JMC has countered with a motion to vacate or modify our order of September 26. Both JMC and the ICC argue that we erred by not complying with the procedural prerequisites of 28 U.S.C. § 2349(b) (1976).[1] Specifically, JMC argues

---

1. 28 U.S.C. § 2349(b) (1976) provides, in pertinent part:

(b) The filing of the petition to review does not of itself stay or suspend the operation of the order of the agency, but the court of appeals in its discretion may restrain or suspend, in whole or in part, the operation of the order pending the final hearing and determination of the petition. When the petitioner makes application for an interlocutory injunction restraining or suspending the enforcement, operation, or execution of, or setting aside, in whole, or in part, any order reviewable under this chapter, at least 5 days' notice of the hearing thereon shall be given to the agency and to the Attorney General. In a case in which irreparable damage would otherwise result to the petitioner, the court of appeals may, on hearing, after reasonable notice to the agency and to the Attorney General, order a temporary stay or suspension, in whole or in part, of the operation of the order of the agency for not more than 60 days from the date of the order pending the hearing on the application for the interlocu-

that we were remiss because no oral hearing was held on petitioners' motion; we entered no findings; and we did not limit the duration of our order to sixty days. After careful consideration we have concluded that JMC's motion must be denied.

■ The initial task before us is to determine the class of order that was entered by this court on September 26, 1979, because 28 U.S.C. § 2349(b) (1976) authorizes three types: a temporary stay or suspension which enjoins operation of the ICC order for not more than 60 days; an interlocutory injunction which restrains "in whole or in part, the operation of the [ICC] order pending the final hearing and determination of the petition;" and, in the nature of things, a perpetual injunction upon the entry of the final decree. *See United States v. Baltimore & Ohio R. R. Co.*, 225 U.S. 306, 321–22, 32 S.Ct. 817, 820, 56 L.Ed. 1100 (1912).[2] Although we may have engendered some confusion by the label affixed to our order of September 26, it falls within the second category because we suspended the force

and effect of the ICC order until further order from this court. *Id.* at 322, 32 S.Ct. at 820. Turning to section 2349(b), a close reading reveals that the sixty day constraint does not apply to interlocutory injunctions which suspend operation of ICC orders pending a final determination. Nor does the requirement that findings be made apply to them unless a temporary stay or suspension has been entered initially; no such stay was entered in this case.

Even assuming that our order was entered pursuant to the authority in section 2349(b), the problem is now reduced to the question of whether we should have held an oral hearing before entering the injunction. Parenthetically, the power of the courts of appeals to enter such an injunction might emanate from any of several sources. Authority can be found in (1) 28 U.S.C. § 2349(b); (2) the All Writs Statute, 28 U.S.C. § 1651 (1976);[3] (3) part of the Administrative Procedure Act, 5 U.S.C. § 705 (1976);[4] and (4) the inherent power of the

tory injunction, in which case the order of the court of appeals shall contain a specific finding, based on evidence submitted to the court of appeals, and identified by reference thereto, that irreparable damage would result to the petitioner and specifying the nature of the damage. The court of appeals; at the time of hearing the application for an interlocutory injunction, on a like finding, may continue the temporary stay or suspension, in whole or in part, until decision on the application.

2. The provision interpreted in that case was section 210 of the Judicial Code, part of a *statutory scheme which provided for review of* most ICC orders in the Commerce Court. Commerce Court Act of 1910, Pub.L.No.61–218, ch. 309, 36 Stat. 542–43 (1910). Jurisdiction to enjoin all ICC orders, except orders for the payment of money or the collection of fines, penalties and forfeitures, was transferred to three-judge district courts in 1913. Urgent Deficiencies Act of 1913, Pub.L. 63–32, 38 Stat. 220 (1913); Boskey and Gressman, *Recent Reforms in the Federal Judicial Structure—Three-Judge District Courts and Appellate Review*, 67 F.R.D. 135, 137–38 (1975). Congress later extended the three-judge court mechanism to judicial review of certain other federal administrative agencies and officers. The Judicial Review Act of 1950 ("Hobbs Act"), Pub.L.No.81–901, 64 Stat. 1129 (1950), transferred power to review and enjoin the final orders of virtually all of these agencies and officers to the courts

of appeal; anomalously, ICC orders were not included. Boskey and Gressman, *supra* at 138–39. Originally, the Hobbs Act was in Title 5 of the Code and the predecessor to section 2349(b), section 9(b) of the Act, was located at 5 U.S.C. § 1039. In 1966, the Hobbs Act was transplanted to Title 28 and section 9(b) became current section 2349(b). In 1975, Congress removed the earlier anomaly and extended jurisdiction to review and enjoin most ICC orders to the courts of appeals by making the Hobbs Act applicable to the majority of its orders. Act of January 2, 1975, Pub.L.No.93–584, 88 Stat. 1917 (1975); Boskey and Gressman, *supra* at 136, 154.

3. 28 U.S.C. § 1651 (1976) provides, in pertinent part:

§ 1651. Writs

(a) The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

4. 5 U.S.C. § 705 (1976) provides:

§ 705. Relief pending review

When an agency finds that justice so requires, it may postpone the effective date of action taken by it, pending judicial review. On such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court, including the court to

courts of appeals to maintain the status quo pending review, *Scripps-Howard Radio, Inc. v. Federal Communications Commission*, 316 U.S. 4, 9–10, 62 S.Ct. 875, 879–880, 86 L.Ed. 1229 (1941).[5] It is noteworthy that none of these wellsprings of authorization mandate that the courts of appeals hold an oral hearing before entering an injunction except section 2349(b). However, for present purposes, it is now necessary to turn our attention to Fed.R.App.P. 18.[6]

Rule 18 is the result of an amendment to 28 U.S.C. § 2072[7] in 1966. This amendment gave the Supreme Court the authority to prescribe rules of practice and procedure in the courts of appeal for the first time. The

which a case may be taken on appeal from or on application for certiorari or other writ to a reviewing court, may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings.

5.   Cf. *Atchison, Topeka & Santa Fe Ry. Co. v. Wichita Board of Trade*, 412 U.S. 800, 820, 93 S.Ct. 2367, 2381, 37 L.Ed.2d 350 (1973) (inherent power of three-judge district court prior to transfer of the review function to the courts of appeals).

6.   Fed.R.App.P. 18 provides:
Application for a stay of a decision or order of an agency pending direct review in the court of appeals shall ordinarily be made in the first instance to the agency. A motion for such relief may be made to the court of appeals or to a judge thereof, but the motion shall show that application to the agency for the relief sought is not practicable, or that application has been made to the agency and denied, with the reasons given by it for denial, or that the action of the agency did not afford the relief which the applicant had requested. The motion shall also show the reasons for the relief requested and the facts relied upon, and if the facts are subject to dispute the motion shall be supported by affidavits or other sworn statements or copies thereof. With the motion shall be filed such parts of the record as are relevant to the relief sought. Reasonable notice of the motion shall be given to all parties to the proceeding in the court of appeals. The court may condition relief under this rule upon the filing of a bond or other appropriate security. The motion shall be filed with the clerk and normally will be considered by a panel or division of the court, but in exceptional cases where such procedure would be impracticable due to the requirements of time, the application may be made to and considered by a single judge of the court.

rule took effect on July 1, 1968. By its terms, it prescribes a procedure for all applications for injunctions from decisions or orders, pending review, of all administrative agencies, regardless of the source of the court's power.

■ The Advisory Committee's Note[8] on rule 18 is somewhat ambiguous. On the one hand it recognizes that: "[m]any of the statutes authorizing review of agency action by the courts of appeals *deal with the question of stays*, and at least one, . . . prohibits a stay pending review. The proposed rule in *nowise affects such statutory provisions respecting stays.*" (emphasis supplied). However, the Note continues:

7.   28 U.S.C. § 2072 (1976) provides, in pertinent part:
§ 2072.   Rules of civil procedure
The Supreme Court shall have the power to prescribe by general rules, the forms of process, writs, pleadings, and motions, and the practice and procedure of the . . . courts of appeals of the United States in civil actions, . . . and for the judicial review or enforcement of orders of administrative agencies, boards, commissions, and officers.
Such rules shall not abridge, enlarge or modify any substantive right . . . . .
All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect.

8.   The Note is herein set out in full:
While this rule has no counterpart in present rules regulating review of agency proceedings, it merely assimilates the procedure for obtaining stays in agency proceedings with that for obtaining stays in appeals from the district courts. The same considerations which justify the requirement of an initial application to the district court for a stay pending appeal support the requirement of an initial application to the agency pending review. See Note accompanying Rule 8. Title 5, U.S.C. § 705 (5 U.S.C.A. § 705 (1966 Pamphlet)) confers general authority on both agencies and reviewing courts to stay agency action pending review. Many of the statutes authorizing review of agency action by the courts of appeals deal with the question of stays, and at least one, the Act of June 15, 1936, 49 Stat. 1499 (7 U.S.C. § 10a), prohibits a stay pending review. The proposed rule in nowise affects such statutory provisions respecting stays. By its terms, it simply indicates the procedure to be followed when a stay is sought.

"[b]y its terms, *it simply indicates the procedure to be followed when a stay is sought.*" (emphasis supplied). We read the former part of this Note to indicate that rule 18 does not supplement nor diminish the *availability* of a stay when a specific statute authorizes or prohibits such an order. The latter part of the Note suggests, however, that the rule provides the exclusive *procedure* that the courts of appeals are to follow when considering an application for a stay.

28 U.S.C. § 2072 (1976) provides that all laws in conflict with the rules promulgated by the Supreme Court, *pro tanto,* have no further force and effect. We think that the Court intended to provide a simple and exclusive procedure for the courts of appeals to employ in weighing a request for a stay. The Advisory Committee note buttresses our intuition.[9]

Section 2072, however, expressly prohibits the Supreme Court from abridging, enlarging or modifying any "substantive right" through its rulemaking power. The right to be heard on the propriety of entering an injunction is undoubtedly a "substantive right;" the right to be heard orally is not. Although the boundaries of "substantive rights" are not coterminous in each instance with the mandates of procedural due process, in this particular case they equate because we are concerned with the process which must be afforded affected parties prior to entry of our injunction.

■ The requirements of due process are defined by: (1) the nature and weight of the private interest affected by the injunction; (2) the risk of an erroneous deprivation of such interest as a consequence of the procedure currently employed and the additional protection afforded by the proposed procedure; and (3) the governmental function involved and the interest served by the current procedure as well as the administrative and fiscal burdens which would result from providing oral hearings. *E.g. Mackey v. Montrym,* 443 U.S. 1, 99 S.Ct. 2612,

2617–21, 61 L.Ed.2d 321 (1979); *Parham v. J. R.,* 442 U.S. 584, 599, 99 S.Ct. 2493, 2502, 61 L.Ed.2d 101 (1979); *Mathews v. Eldridge,* 424 U.S. 319, 334–35, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976).

The private interest involved is the authority to haul various commodities in several southern states. An ETA is limited in duration to 30 days but extensions may be granted by the ICC. Consequently, sizable revenues may be at stake.

■ The risk of an erroneous decision under the current procedure is slight. Rule 18 ordinarily requires an applicant to apply to the agency for a stay in the first instance. An application to the court of appeals must show (1) application to the agency was not practicable; or (2) the agency denied the stay and the reasons for the denial; or (3) the agency did not afford the relief requested. Additionally, the applicant must state the reasons for his request, the facts relied upon, and if the facts are in dispute, the application must be supported by affidavits or other sworn statements. Relevant parts of the record must be submitted as well. Moreover, we have always welcomed briefs and memoranda to aid our decisions. Consequently, an oral hearing is not likely to increase the accuracy of our decision in the vast majority of cases; and, as the Supreme Court has said, "[t]he nature of a due process hearing is shaped by the 'risk of error inherent in the truth-finding process as applied to the generality of cases, not the rare exceptions.'" *Califano v. Yamasaki,* 442 U.S. 682, 696, ——, 99 S.Ct. 2545, 2555, 61 L.Ed.2d 176 (1979), *quoting Mathews v. Eldridge,* 424 U.S. 319, 344, 96 S.Ct. 893, 907, 47 L.Ed.2d 18 (1976).

■ Finally, the fiscal and administrative burdens of requiring an oral hearing are patent. Our court calendar is already bursting at the seams with the current backlog. If we are required to hold an oral hearing on every application to enjoin a final order, pending review of each agency

---

**9.** Absent a much clearer intent, it strains credulity to imagine that the Supreme Court intentionally left us saddled with the burden of hold-

ing oral hearings when it had the power to relieve us of it. It is only slightly less absurd to believe the Court was ignorant of our plight.

**486**

within the Hobbs Act, the backlog would increase exponentially. Justice would become even more costly for the parties.

The balance weighs in favor of not requiring an oral hearing on the applications for injunctions. The added expense and delay would not result in any increased accuracy in the decision on the request for temporary relief. Moreover, repercussions would be experienced by other litigants not concerned with the entry of these injunctions. They, too, would suffer the consequences of increasing delays and expense.

The ICC in its brief informs us that it is the usual practice of this, and other courts of appeals, to enter stays without literal compliance with the terms of 28 U.S.C. § 2349(b). It concedes that this consistent and well-known departure from the statute lends support to the view that Congress did not intend the procedural mechanism to apply literally. The government position is that the section 2349(b) hearing requirements can be satisfied without resort to an oral hearing. It suggests that we are free to hold "paper" hearings based on "affidavits and other written pleadings." We are at a loss to understand how this proposal deviates from the requirements of Fed.R. App.P. 18.

Because rule 18 does not require an oral hearing as part of its procedure, no error was committed. *Cf. American Paper Institute, Inc. v. Interstate Commerce Commission*, 197 U.S.App.D.C. 181, 607 F.2d 1011 (D.C.Cir. 1979) (less stringent requirements of Fed.R.App.P. 15(a) regarding content of petition for review of ICC orders control over more onerous requirements in the Hobbs Act, 28 U.S.C. § 2344 (1976)).

DENIED.