**MANHATTAN TRANSIT CO., Inc., v. UNITED STATES et al.**

No. 4626.

District Court, D. Massachusetts.

June 13, 1938.

Benjamin B. Levenson, of Boston, Mass., for plaintiff.

E. M. Reidy, Asst. Chief Counsel, and Daniel W. Knowlton, Chief Counsel, both of Washington, D. C., for Interstate Commerce Commission.

Elmer B. Collins, Sp. Asst. to Atty. Gen., Thurman Arnold, Asst. to Atty. Gen., and Francis J. W. Ford, U. S. Atty., of Boston, Mass.

Before MORTON, Circuit Judge, and BREWSTER and McLELLAN, District Judges.

BREWSTER, District Judge.

This proceeding is brought to restrain the enforcement of and to set aside orders of the Interstate Commerce Commission, issued under the provisions of the Motor Carrier Act of 1935, 49 U.S.C.A. § 301 et seq.

Plaintiff's application for injunctive relief was heard by a three-judge court, organized under 28 U.S.C.A. § 47.

The case was presented upon facts alleged in plaintiff's verified bill of complaint and amendment thereto, which amendment set out in full the challenged orders.

The material facts do not appear to be in dispute. They may be stated as follows:

Plaintiff is a carrier by motor vehicle of property in interstate commerce. It filed a schedule of rates, identified as MF. I.C.C. No. 4, effective February 23, 1937, which is now in effect. On October 27, 1937, it filed a new schedule identified as Supplement No. 1 to MF. I.C.C. No. 4, effective December 6, 1937. This new schedule of rates was suspended until January 30, 1938 by an order of the Commission, issued November 22, 1937. This order (Investigation and Suspension Order M–228) recites that 21 motor carriers, designated in the order, which included the plaintiff, had filed with the Commission schedules stating new individual and joint rates to become effective November 26, 1937 and later. It was ordered that the Commission, upon its own motion, enter upon a hearing concerning the lawfulness of the rates, charges, regulations and practices stated in said schedule. The order further recited that the schedules made certain reductions and changes in rates for the transportation of commodities in interstate commerce, and the rights and interests of the public appearing to be injuriously affected thereby, it being the opinion of the Commission that the effective date of said schedule should be postponed pending hearing, it was thereupon ordered that the operation of all of said schedules contained in said tariffs be suspended until January 30, 1938. It was further ordered that the carriers receive a copy of the order and that they be notified of the time and place of hearing.

No time was ever fixed for a hearing upon this order, nor does it appear that the period of suspension was ever extended beyond January 30, 1938.

In November, 1937, there was inaugurated a movement among some 400 motor carriers, operating in New England and parts of New York and New Jersey, for the purpose of reaching a solution of the problem presented by the necessity of establishing classifications and more uniform tariffs. This object was to be attained through the medium of committees and conferences. The plaintiff and representatives of the Commission participated in these activities. How far their efforts had progressed is not clear, but it was stated that certain tariffs had been proposed covering a large number of commodities.

On March 30, 1938, the plaintiff filed with the Commission a new schedule (Supplement No. 2 to MF. I.C.C. No. 4) to become effective May 1, 1938. This new tariff, according to the representations of plaintiff's attorney, was consistent with those proposed by the conference. On April 12, 1938, the Commission issued another Investigation and Suspension Order (M–335). The terms of this order were similar to those of M–228 except in the following respects:

The list of designated carriers was not identical; the new rates made certain increases as well as reductions, and July 14, 1938, was fixed as the date to which the operation of the schedules was to be suspended. In this order the Commission fixed April 29, 1938 as the time and Boston as the place for a hearing on the order.

On the same day, to wit, April 12, 1938, Division 5 of the Commission issued an order entitled "Ex Parte No. M.C. 22" "Motor Carrier Rates in New England". The terms of this order are as follows:

"The said division having under consideration the subject of the rates, charges, classifications, rules, regulations and practices applicable to the transportation of property in interstate or foreign commerce by common carriers by motor vehicle between points as hereinafter described;

"It is ordered, That an investigation be, and it is hereby, instituted by the said division, on its own motion, into and concerning the lawfulness of the maximum, minimum, and precise basis of all rates, charges, and classifications, and the rules, regulations, and practices relating thereto, applicable to the transportation by all common carriers by motor vehicle subject to the Motor Carrier Act, 1935, of all property in interstate or foreign commerce between all points in the territory described below, with a view to determining whether the rates, charges, and classifications, and the rules, regulations, and practices relating thereto, of respondents, or any of them, applicable to such transportation are in any respects in violation of law, and of making such findings and entering such order or orders in the premises, and of taking such other and further action, as the facts and circumstances may appear to warrant."

Then followed a description of the territory involved, which included the New England states and portions of New York and New Jersey. This order was set down for hearing at the same time and place as the hearing on Order No. M–335.

While the papers would indicate that the Commission had received the 5-days' notice of plaintiff's application, it was suggested, as the hearing upon it was about to close, that only a 3-days' notice had been received, and that the Court could only order a temporary stay upon a showing of irreparable damage. Plaintiff's attorney thereupon offered to show such irreparable damage, and his offer of proof was received. In substance it was as follows:

Between November, 1937 and March, 1938, common carriers in the New England area, New York and part of New Jersey had been engaged in the promulgation of rates, and, through proposals of carriers in their respective areas, rates had been substantially agreed upon; that hearings had been conducted at intervals during this period by the conferences in which carriers in their respective districts had participated and had agreed upon tentative rates which were "reasonable, compensatory, just and not discriminatory, on commodities running into the thousands, covering points in the New England area;" that there is a so-called Class Rate Based Upon Cost theory, which is a component part of the conference rate, and that many carriers had voluntarily and without charge given up their time during this period at the solicitation of a representative of the Commission; that over a thousand dollars had been spent in the preparation of these tariffs; that the rates, in some instances, were more productive of revenue than existing rates and in many instances were agreeable to the various shippers and the public; that many carriers have sought to increase their revenue by adopting the proposed rates, which were higher than the existing charges, and in many instances carriers had, as a result of the conferences, refrained from reducing rates because of competition in the field; and that the continuation of the suspension orders works a hardship upon the carriers who have participated in the conference in that those who have concurred in the proposed tariffs will be deprived of the benefit of having other carriers, who have an existing lower rate, conform to the proposed rates.

The Court took the offer of proof under consideration and denied plaintiff's application for a temporary restraining order. The presiding judge stated that, in the opinion of the Court, assuming the facts to be as stated in the offer of proof, the plaintiff did not make out a case for a restraining order under the statute. He added that the Court would take under advisement the further question as to whether the bill ought to be dismissed as not stating a case on the merits.

### Conclusions.

The plaintiff, in its bill of complaint, seeks the following equitable relief:

1. Temporary and permanent injunction enjoining the defendants from enforcing Investigation and Suspension Order M–228.

2. Temporary and permanent injunction restraining the defendants from issuing suspension orders respecting tariffs filed by the plaintiff.

3. Temporarily and permanently enjoining the defendants from proceeding with the hearing under Ex Parte No. M. C.–22 until the Commission has determined the status of Class 2 and Class 3 operatives.

4. An order vacating suspension orders M–228, M–335 and Ex Parte M.C.–22.

The allegations of the bill of complaint, if proved, would not entitle the plaintiff to the equitable relief for which it has applied. The temporary stay, pending consideration of the application for an in-

terlocutory injunction, was properly denied. United States, Interstate Commerce Commission et al. v. Baltimore & Ohio R. Co., 225 U.S. 306, 32 S.Ct. 817, 56 L.Ed. 1100; Board of Railroad Commissioners of North Dakota v. Great Northern Railway Co., 281 U.S. 412, 50 S.Ct. 391, 74 L.Ed. 936. The reasons for denying it have already been stated.

■ This statutory court has no jurisdiction to enjoin the Commission from issuing orders. The statute may be invoked only when the plaintiff is seeking to enjoin, or set aside, orders made or entered by the Commission. Compare Shannahan v. United States of America, 58 S.Ct. 732, 82 L.Ed. 1039, decided April 4, 1938.

The question reserved for consideration is whether, upon the facts alleged, this Court would be justified in granting plaintiff's prayers for interlocutory and permanent injunctions and for the vacating of the orders set forth in the statement of facts.

The plaintiff has applied for interlocutory injunction enjoining the Commission from enforcing the suspension order of November 22, 1937 (M–228) and the ex parte order of April 12, 1938 (M.C.–22).

The statute which confers upon the Commission authority to issue suspension orders is found in Section 216 (g) of the Motor Carrier Act, 49 U.S.C.A. § 316 (g). The pertinent provisions of this section are:

"Whenever there shall be filed with the Commission any schedule stating a new individual or joint rate, fare, charge, or classification for the transportation of passengers or property by * * * carriers by motor vehicle, * * * in interstate or foreign commerce, * * * the Commission is hereby authorized and empowered * * * upon its own initiative * * * upon reasonable notice, to enter upon a hearing concerning the lawfulness of such rate, fare, * * * and pending such hearing and the decision thereon the Commission, by filing with such schedule and delivering to the carrier or carriers affected thereby a statement in writing of its reasons for such suspension, may suspend the operation of such schedule and defer the use of such rate, fare, or charge * * * for a period of ninety days and if the proceeding has not been concluded and a final order made within such period the Commission may,

from time to time, extend the period of suspension by order, but not for a longer period in the aggregate than one hundred and eighty days beyond the time when it would otherwise go into effect. * * * If the proceeding has not been concluded and an order made within the period of suspension, the proposed change of rate, fare, or charge, * * * shall go· into effect at the end of such period: Provided, That this paragraph shall not apply to any initial schedule or schedules filed by any such carrier in bona fide operation when this schedule [section] takes effect."

This statute, by express terms, authorizes the Commission to suspend new tariffs filed with it. There is nothing novel in statutory provisions empowering the Commission to suspend rates pending investigation. See Sec. 15 (7) of the Interstate Commerce Act, 49 U.S.C.A. § 15 (7); United States v. Illinois Central Railroad Co., 291 U.S. 457, 54 S.Ct. 471, 78 L.Ed. 909.

■ Nothing has appeared to indicate that by issuing either of these suspension orders the Commission acted arbitrarily or exceeded its authority. We are unable to see any merit in the contention of the plaintiff that the order of April 12, 1938 (M–335) was an unlawful attempt to extend the operation of the suspension order of November 22, 1937 (M–228). The earlier order was, by its terms, limited to January 30, 1938, and as no order extending the period was issued by the Commission, that order had spent its force.

■ The new tariffs are now suspended by virtue of the suspension order of April 12, 1938 (M–335) and a hearing has been held within the time limited by the statute. Plaintiff does not seek any injunction with respect to this order but does ask the Court to vacate it. No grounds are presented for such an interference with the administration of the act. Whether rates shall be suspended during investigation is a matter of administrative discretion, with power lodged only in the Commission. Baltimore & Ohio Railroad Co. v. United States ex rel. Pitcairn Coal Co., 215 U.S. 481, 494, 30 S.Ct. 164, 54 L.Ed. 292; Board of Railroad Commissioners of North Dakota v. Great Northern Railroad Co., 281 U.S. 412, at page 417, 50 S.Ct. 391, 392, 74 L.Ed. 936; M. C. Kiser Co. v. Central of Georgia Railway Co., D. C., 236 F. 573, affirmed 5 Cir., 239 F. 718; Algoma Coal & Coke Co. v. United States, D. C., 11 F.Supp. 487.

Relative to Ex Parte Order No. M.C.–22, it is to be noted that section 205 of the Motor Carrier Act, 49 U.S.C.A. § 305, confers upon the Commission, or any member of it, or an examiner appointed by it, authority to hear any matter arising in the administration of the Act.

Clearly, the Commission's action in ordering the hearing for April 29, 1938, cannot be disturbed by the Court.

Furthermore, it is quite probable that the question had become moot before it came before this Court on May 6, 1938. It was stated, and not denied, that hearings had already been held under this order on April 29, 1938. Whether the hearings are concluded is a matter upon which the Court was not advised.

There is a further contention, apparently based on the recent decision of the Supreme Court in Morgan v. United States, 58 S.Ct. 773, 82 L.Ed. 1129, decided April 25, 1938, that "the maintenance of proper standards on the part of administrative agencies in the performance of their quasi-judicial functions" (page 778) required the Commission, under the peculiar circumstances of the case, to accept, without hearing and suspension, schedules proposed as a result of the so-called "conferences". It is a sufficient answer to this contention that the action of these conferences could not possibly be held to be binding upon the Commission or deprive it of any administrative powers which had been given it by statute. Nor does such action, or failure to act, give rise to any equities in favor of the plaintiff which a court of equity can recognize. There is nothing apparent in this case that conflicts with the "basic concepts of fair play".

Although this matter is before the Court on plaintiff's application for injunction, the Court may, without further consideration of the merits, dismiss the bill if satisfied that the bill does not make out a case entitling plaintiff to relief in equity. Petroleum Exploration, Inc. v. Public Service Commission of Kentucky, 58 S.Ct. 834, 82 L.Ed. 1294, May 2, 1938.

Inasmuch as the Court has reached the conclusion, as above stated, that the allegations of the bill are insufficient to entitle the plaintiff to the relief sought, a decree may be entered not only denying its application for interlocutory injunction but also dismissing the bill.