586 F.2d 29
 AKRON, CANTON & YOUNGSTOWN RAILROAD COMPANY, et al., Petitioners,
and
Union Pacific Railroad Company, Intervening Petitioners,
v.
UNITED STATES of America, and Interstate Commerce
Commission, Respondents,
and
Southern Railway Company, Intervening Respondents.
 No. 77-2228.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 22, 1978.
Decided Oct. 30, 1978.
 
 Richard J. Schreiber, Burlington, Northern, Inc., Chicago, Ill., Fritz R. Kahn, Washington, D. C., for petitioners.
 L. Marie Guillory, Washington, D. C., Richard H. Stokes, Long Island R.R. Co., Jamaica, N. Y., for respondents.
 Before SPRECHER, TONE and WOOD, Circuit Judges.
 SPRECHER, Circuit Judge.
 
 
 1
 At issue is the Interstate Commerce Commission's determination that an individual railroad has the independent right to petition the Commission for short notice upon which to withdraw its concurrence in proposed and filed but not yet effective carrier-made joint rates, without the consent of the other parties to the joint rates.
 
 
 2
 * The Commission by order of January 22, 1976, permitted the nation's railroads, including the Southern Railway Company (Southern), to jointly publish and file a 7-percent general-increase master tariff for virtual nationwide application, with certain exceptions, upon not less than 30 days' notice to the Commission and the public, subject to protest and possible suspension. After the increase tariff had been filed with the Commission on January 25, but prior to the scheduled effective date of February 24, 1976, Southern discovered that it had inadvertently concurred in the filing for its account of tariffs which would, upon becoming effective, increase joint line rates on aluminum smelter products originating on its line at Warwick, Indiana.
 
 
 3
 On January 26, Southern notified its rate bureau of its intention not to concur and instructed its tariff publishing agent to publish its nonconcurrence, insofar as the higher rates would apply on aluminum smelter products from Warwick, Indiana to various destinations. The tariff publishing agent refused to comply with the tariff publication instructions on the ground that the other joint-line connecting railroad participants were unwilling to concur in Southern's request.
 
 
 4
 On February 18, 1976, Southern requested the Commission to enter a declaratory order pursuant to the Administrative Procedure Act, 5 U.S.C. § 554(e), declaring that there had been a breach of its right of independent action to abstain from a proposed rate change before the tariff became effective.
 
 
 5
 On October 11, 1977, the Commission concluded that after a tariff has been filed, but before it has become effective, a railroad can individually withdraw its concurrence in joint-line items in the tariff. The Commission further held that Section 5c(5)(a) of the Interstate Commerce Act would be violated if a single railroad could not withdraw before the effective date of the tariff without the consent of concurring parties. The Commission filed a supplemental report on March 7, 1978, clarifying its prior order and particularly basing the prior report on Section 6(3) of the Act and on the Commission's regulation 49 C.F.R. § 1300.58(b). Petition for review of the Commission's decision was sought by 28 railroads.
 
 II
 
 6
 Railroads may, with Commission approval, form associations and enter into rate agreements through rate bureaus which file and publish rates jointly arrived at for the account of each of the association's members. Because such concerted action in the area of ratemaking clearly falls within the proscriptions of the federal antitrust laws, Congress in authorizing such associations exempted them from the antitrust laws, but under certain statutory conditions. Ajayem Lumber Corp. v. Penn Central Transportation Co., 487 F.2d 179, 181 (2d Cir. 1973). One condition appears in 49 U.S.C. § 5c(5)(a) which provides in part:
 
 
 7
 The Commission shall not approve . . . any agreement which establishes a procedure for the determination of any matter through joint consideration, unless it finds that under the agreement there is accorded to each party the free and unrestrained right to take independent action, without fear of any sanctions or retaliatory action, at any time before or after any determination arrived at through such procedure.
 
 
 8
 The Commission was faced with the problem of correlating Southern's right of independent action with other facets of the rate-making process. Section 6(3) of the Interstate Commerce Act provides that "(n)o change shall be made in . . . joint rates, fares, and charges which have been filed and published by any common carrier . . . except after thirty days' notice to the Commission and to the public published as aforesaid . . .." 49 U.S.C. § 6(3). The petitioning railroads have contended that Section 6(3) requires that Southern give 30 days' notice of its nonconcurrence in the joint rates.
 
 
 9
 However, a proviso in Section 6(3) provides that "the Commission may, in its discretion and for good cause shown, allow changes upon less than the notice herein specified, or modify the requirements of this section in respect to publishing, posting, and filing of tariffs, either in particular instances or by a general order applicable to special or peculiar circumstances or conditions."
 
 
 10
 Therefore in its October 11, 1977 order, the Commission ordered that
 
 
 11
 in the future, tariff publishing agents shall not refuse to submit for the Commission's consideration all petitions for short notice pursuant to Section 6(3) of the Act, except that tariff publishing agent need not submit special permission applications which would seek short notice to revise Effective tariff rates or provisions which have joint line application unless the special permission request is concurred in by all parties to the effective matter.
 
 
 12
 (Emphasis added). Inasmuch as Southern had acted before the tariff had become effective, it was not subject to the exception.
 
 
 13
 The Commission's action not only implements the Congressional intent of Section 5c(5)(a) but is in complete conformity with Section 6(3).
 
 III
 
 14
 The petitioning railroads next contended that the Commission's order excepting only "effective" tariff rates conflicted with the Commission's own regulation 58(b). Commission regulation 49 C.F.R. § 1300.58(b) provides in part:
 
 
 15
 Applications for permission to establish rates, rules, or regulations on less than statutory notice . . . must be made by the agent or carrier that holds authority to file the proposed changes. If the application requests permission to make changes in joint tariffs it must state that it is filed for and on behalf of all carriers parties to the proposed change.
 
 
 16
 In the order here under review, the Commission has interpreted the last sentence of Rule 58(b) as applying only to "effective" tariffs and not, as the petitioners have contended, also applying to "filed but not yet effective" tariffs. This is an interpretation clarifying the Commission's own rule in order to facilitate the rate-making process while protecting each railroad's right of independent action.
 
 
 17
 Rates, in the first instance, are set by the railroads. The proposed rate is filed with the Commission and notice is given to the public. After 30 days' notice (or a shorter period, if authorized by the Commission), the rate becomes effective as a carrier-made rate. The Commission has the authority, however, during the 30-day period, to suspend the proposed tariff for a maximum of seven months in order to investigate the lawfulness of the new rates. At the end of seven months, the carrier-proposed rates go into effect by operation of law unless the Commission has completed its investigation and affirmatively disapproved the new rates. United States v. Chesapeake & Ohio Ry., 426 U.S. 500, 511-12, 96 S.Ct. 2318, 49 L.Ed.2d 14 (1976); United States v. SCRAP, 412 U.S. 669, 672-74, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973).
 
 
 18
 The Commission has "broad discretion in the exercise of its power of suspension; judicial review of suspension action or inaction is most severely limited, if not foreclosed." Aberdeen & Rockfish R.R. v. SCRAP, 409 U.S. 1207, 1208, 93 S.Ct. 1, 2, 34 L.Ed.2d 21 (1972). See also, Arrow Transportation Co. v. Southern Ry., 372 U.S. 658, 667, 83 S.Ct. 984, 10 L.Ed.2d 52 (1963); Board of R.R. Comm. v. Great Northern Ry., 281 U.S. 412, 429, 50 S.Ct. 391, 74 L.Ed. 936 (1930). The Commission's broad discretion in the rate-making process applies to the separate elements of that process, including the procedure by an individual railroad in nonconcurring in joint tariffs before they become effective.
 
 
 19
 "(T)he formulation of procedures was basically to be left within the discretion of the agencies to which Congress had confided the responsibility for substantive judgments." Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc., 435 U.S. 519, 524, 98 S.Ct. 1197, 1202, 55 L.Ed.2d 460 (1978).
 
 
 20
 " When faced with a problem of statutory construction, (the Supreme Court) shows great deference to the interpretation given the statute by the officers or agency charged with its administration. . . . When the construction of an administrative regulation rather than a statute is in issue, deference is even more clearly in order." Udall v. Tallman, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965). Even when "the meaning of the language is not free from doubt, we are obligated to regard as controlling a reasonable, consistently applied administrative interpretation if the Government's be such." Ehlert v. United States, 402 U.S. 99, 105, 91 S.Ct. 1319, 1323, 28 L.Ed.2d 625 (1971). We are also obligated to regard as controlling an interpretation of its own regulations which "sensibly conforms to the purpose and wording of the regulations." Northern Indiana Public Service Co. v. Porter County Chapter, 423 U.S. 12, 15, 96 S.Ct. 172, 174, 46 L.Ed.2d 156 (1975).
 
 
 21
 Thirty days' notice for new rates protects the public interest and tends to minimize rebates, discriminations and preferences. A shorter notice for indicating nonconcurrence in a newly proposed but not yet effective rate serves the same interests as well as the individual railroad's right of independent action. Such an interpretation is reasonable, consistently applies and sensibly conforms to the purpose and wording of both the statute and the regulations.
 
 
 22
 The Interstate Commerce Commission's order is affirmed.
 
 
 23
 AFFIRMED.